IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KYLE ISKE, Individually and on Behalf of All Others Similarly Situated, § § § § | | |
| Plaintiff, § | CIVIL ACTION NO. 3:22-cv-2624 | |
| § | | |
| v. § | COLLECTIVE ACTION | |
| § | | |
| PRECISION DYNAMICS INTERNATIONAL, LLC, § § § | DEMAND FOR JURY TRIAL | |
| Defendant. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Kyle Iske ("Iske"), individually and on behalf of all others similarly situated, files this Complaint against Defendant Precision Dynamics International, LLC ("PDI" or "Defendant"), showing in support as follows:

### I.    NATURE OF ACTION

1. This is a civil action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (collectively, the "FLSA"), seeking damages for Defendant's failure to pay Iske time and one-half the regular rate of pay for all hours worked over 40 during each seven-day workweek while working for Defendant for the period of time beginning three years prior to the filing of this lawsuit and forward.

2. Pursuant to 29 U.S.C. § 216(b), Iske files this lawsuit individually and as an FLSA collective action on behalf of all similarly situated current and former misclassified independent contractors who worked for Defendant while paid on a strictly salary basis, and who, like Iske, were not paid time and one-half their respective rates of pay for all hours worked over 40 in each

seven-day workweek for the time period of three years preceding the date this lawsuit was filed and forward (the "Collective Action Members").

3. Iske and the Collective Action Members seek all damages available under the FLSA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest.

## II.     THE PARTIES

### A.     Plaintiff Kyle Iske

4. Iske is an individual residing in Little Elm, Texas. Iske has standing to file this lawsuit.

5. Defendant employed Iske from 2008 through July 18, 2022 as a Product Sales Trainer/Facilitator.

6. At material times, Iske was paid on a strictly salary basis. Iske typically worked in excess of 40 hours per work week; however, Defendant did not pay him any overtime premium wages because Defendant misclassified Iske as an independent contractor.

7. Iske's written consent to participate in this lawsuit is filed along with this Original Complaint as **Exhibit 1**.

### B.     Putative Collective Action Members

8. The putative Collective Action Members are:

All individuals who worked as Product Sales Trainers/Facilitators while misclassified as independent contractors companywide at any time from the three-year period prior to the filing of this lawsuit to the present.

9. Iske and the putative Collective Action Members are all similarly situated within the meaning of Section 216(b) of the FLSA.

### C.  **Defendant Precision Dynamics International, LLC**

10. Defendant Precision Dynamics International, LLC is a limited liability company organized under the laws of the State of Arizona.

11. During all times relevant to this lawsuit, Defendant has done, and continues to do, business in the State of Texas.

12. At all times relevant to this lawsuit, Defendant is and has been an "enterprise engaged in commerce" as defined by the FLSA. *See* 29 U.S.C. § 203(s)(1).

13. At all times relevant to this lawsuit, Defendant employed and continues to employ two or more employees.

14. Defendant is/was an employer of Iske and the putative Collective Action Members. *See* 29 U.S.C. § 203(d).

15. At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce or in the production of goods for commerce and/or who regularly handled, sold, or otherwise worked on goods and/or materials that were moved in and/or produced for commerce. *See* 29 U.S.C. §§ 206-207. Examples of such goods and/or materials include: computers, paper, pens, telephones, and other supplies/materials used in connection with Defendant's business operations.

16. On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume of at least $500,000.

17. Defendant may be served with summons through its registered agent, East Valley Service Corp., at 3850 E. Baseline Road, Suite 125, Mesa, Arizona 85206.

### III. JURISDICTION AND VENUE

18. This Court has federal question jurisdiction over all claims pursuant to 28 U.S.C. § 1331.

19. The United States District Court for the Northern District of Texas has personal jurisdiction over Defendant because Defendant does business in Texas and in this District, and because many of the acts complained of and giving rise to the claims alleged herein occurred in Texas and in this District.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

### IV. FACTUAL BACKGROUND

21. Through an agreement with Nissan North America, Defendant provides an in-market training/facilitation program known as the Nissan BEST program ("NBEST"). Through the NBEST program, PDI facilitators support more than 700 Nissan dealerships with in-dealership sessions that emphasize product knowledge, presentation, and sales processes.[1] According to Defendant's website, "[s]ince 2008, more than 50,000 total NBEST sessions have provided Nissan sales professionals with the tools to improve their job performance, sell more cars, and create lasting customer relationships. Participating NBEST dealerships show an average 9-point increase in the Nissan Sales KPI Index over non-NBEST dealerships."[2]

22. To do this work, Defendant employs Product Sales Trainers/Facilitators, like Iske and the putative Collective Action Members, who are the individuals who perform the training/facilitation for Defendant's customer, Nissan North America.

---

[1] https://www.pdiusa.net/case_studies.html

[2] *Id.*

23. Iske worked for Defendant as a Product Sales Trainer/Facilitator. He worked in a designated area encompassing North Texas, Oklahoma, northwest Arkansas, southwest Missouri, and southern Kansas from in or about 2008 through July 18, 2022.

24. Defendant misclassifies its Product Sales Trainers/Facilitators, like Iske and the putative Collective Action Members, as independent contractors.

25. However, Defendant retains significant control over all aspects of its Product Sales Trainers/Facilitators' employment.

26. The following conduct demonstrates that Defendant acted like an employer with respect to Iske and the putative Collective Action members:

   a. Defendant instructed Iske and the putative Collective Action Members about when, where, and how they were to perform their work. Defendant provided Iske and the putative Collective Action Members a calendar schedule containing the time, date, and order of each training workshop. Any deviation from the schedule required Iske and the putative Collective Action Members to complete a "Schedule Change Request Form," which form had to be submitted to Defendant and Nissan North America;

   b. Defendant required Iske and the putative Collective Action Members to attend "Train the Trainer" training classes at the Nissan North America training center in Franklin, Tennessee. Iske and the putative Collective Action Members were also required to take and pass an online certification test through Nissan Virtual Academy;

   c. Defendant required Iske and the putative Collective Action Members to devote their full-time service to PDI via the NBEST program;

d. Defendant required Iske and the putative Collective Action Members to conduct their own training workshops; no substitutions were allowed;

e. Defendant required Iske and the putative Collective Action Members to conduct their assigned training workshops at franchised Nissan automotive dealerships, with the exception being a training workshop held at a special event venue;

f. Defendant required Iske and the putative Collective Action Members to work at Nissan franchised dealerships from 9:00 a.m. to 12:00 p.m. and from 2:00 p.m. to 5:00 p.m.;

g. Defendant set forth the required procedures to be followed and the order and manner in which Iske and the putative Collective Action Members were to perform their work. In particular, Defendant required Iske and the putative Collective Action Members to present trainings to Nissan dealerships pursuant to a set sequence of material set forth in facilitator training manuals provided by Defendant;

h. Defendant required Iske and the putative Collective Action Members to complete and submit to Defendant weekly activity reports with observations and comments concerning trainings they conducted that week;

i. Defendant paid all business expenses for Iske and the putative Collective Action Members, including, but not limited to, hotel, fuel, vehicle maintenance, airfare, Uber/taxi expenses, etc.;

j. Defendant furnished Iske and the putative Collective Action Members with a company vehicle, company laptop, iPad, cell phone, uniform (Nissan shirts), office supplies, equipment cases, etc. so they could perform their duties;

  k. Iske's and the putative Collective Action Members' services were integrated into Defendant's operations. Indeed, without Product Sales Trainers/Facilitators, Defendant's provision of the NBEST program cannot exist;

  l. Iske and the putative Collective Action Members constituted the workforce without which Defendant could not provide the NBEST program;

  m. Iske and the putative Collective Action Members worked for Defendant for long periods of time, as is common with employees; and

  n. Defendant imposed restrictive covenants on Iske and the putative Collective Action Members, limiting their ability to solicit business and Defendant's personnel.

27. Iske regularly worked overtime hours for Defendant.

28. For this work, Iske was paid on a salary basis. Specifically, Defendant paid Iske a semimonthly salary. However, Iske was not paid any additional compensation when he worked more than 40 hours per workweek.

29. During all times relevant, Defendant employed numerous Product Sales Trainers/Facilitators in connection with the NBEST program who are/were similarly situated to Iske. Those employees were also paid on a strictly salary basis. Those employees also routinely worked (and work) in excess of 40 hours in a workweek. Defendant similarly misclassified those individuals as independent contractors and failed to compensate those individuals all due and owing overtime pay.

## V. FLSA CLAIMS

30. Iske incorporates the preceding paragraphs by reference as if set forth fully in this section.

### A. FLSA Allegations

31. The FLSA applied to Iske and the putative Collective Action Members when they worked for Defendant.

32. At all relevant times, Iske and the putative Collective Action Members were misclassified as independent contractors.

33. During the relevant time period, Iske and the putative Collective Action Members did not receive any overtime premium pay they were owed when they worked over 40 hours in a workweek.

34. This failure of Defendant to pay overtime premium pay to Iske and the putative Collective Action Members was a violation of the FLSA. *See* 29 U.S.C. § 207(a)(1).

### B. Collective Action Allegations

35. Iske seeks to bring his claim under the FLSA individually and on behalf of all individuals who worked as Product Sales Trainers/Facilitators on behalf of Defendant and were misclassified as independent contractors at any time from the three-year period prior to the filing of this lawsuit to the present. Those who file a written consent will be a party to this action pursuant to 29 U.S.C. § 216(b).

36. On information and belief, the class of putative Collective Action Members consists of dozens of individuals who had the same or similar job title and duties as Iske who worked for Defendant in various areas around the United States.

37. Iske has actual knowledge that putative Collective Action Members have been denied overtime premium pay for hours worked over 40 in a workweek. Iske worked with other Product Sales Trainers/Facilitators who were employed by Defendant. This resulted in personal knowledge of the treatment of those co-workers. Furthermore, other Product Sales Trainers/Facilitators have shared with Iske that they experienced similar pay violations as those described in this Complaint.

38. The putative Collective Action Members are similarly situated to Iske in all relevant respects, having worked as Product Sales Trainers/Facilitators while being misclassified as independent contractors and paid on a strictly salary basis without receiving any due and owing overtime wages for hours worked over 40 in a workweek.

39. The putative Collective Action Members regularly work or have worked in excess of 40 hours in a workweek.

40. Defendant's failure to pay all due and owing overtime wages for hours worked over 40 in a workweek results from generally applicable policies or practices, and does not depend on the personal circumstances of any of the putative Collective Action Members.

41. The specific job titles or precise job responsibilities of each putative Collective Action Member do not prevent collective treatment.

42. Although the exact amount of damages may vary among the putative Collective Action Members, the damages owed to them are easily calculable using a simple formula uniformly applicable to all of them.

43. Iske proposes that the class of putative Collective Action Members be defined as:

> All individuals who worked as Product Sales Trainers/Facilitators while misclassified as independent contractors companywide at any time from the three-year period prior to the filing of this lawsuit to the present.

44. Iske reserves the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or other proceeding.

45. Iske further reserves the right to amend the definition of the putative class, or sub-classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VI.   CAUSE OF ACTION

### A. Claim for Relief as to Iske and the Putative Collective Action Members – Violation of the FLSA: Failure to Pay Overtime.

46. Iske incorporates all allegations contained in the foregoing paragraphs.

47. 29 U.S.C. § 216(b) allows Iske to assert an FLSA claim on behalf of himself and all others similarly situated. Iske asserts this claim on behalf of himself and all similarly situated individuals in the class defined above, who worked for Defendant at any time from the date three years prior to the date the Complaint was originally filed continuing through the present. All requirements for a collective action have been met.

48. 29 U.S.C. § 207 requires Defendant to pay all employees for each hour worked in excess of 40 at a rate equal to one and one-half times the regular rate of pay.

49. Defendant failed to pay Iske and the putative Collective Action Members overtime.

50. Based on the foregoing, Iske and the putative Collective Action Members are entitled to the full statutory overtime as set forth in 29 U.S.C. § 207 for all periods in which they worked for Defendant.

51. Defendant's conduct was willful and with the intent to avoid paying them overtime and other benefits to which they are legally entitled.

52. Iske and the putative Collective Action Members are not exempt from the overtime requirements of the FLSA.

53. The FLSA provides that a private civil action may be brought for the payment of federal minimum wages and overtime together with an equal amount in liquidated damages. Moreover, Iske and the putative Collective Action Members are entitled to recover attorneys' fees and costs incurred in enforcing their rights pursuant to 29 U.S.C. § 216(b).

54. 29 U.S.C. § 211(c) provides in relevant part:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

55. 29 C.F.R. § 516.2 further requires that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and the total hours worked by each employee during the workweek.

56. To the extent that Defendant failed to maintain all records required by the aforementioned statute and regulations, and failed to furnish to Iske and the putative Collective Action Members comprehensive statements showing the hours they worked during the relevant time period, Defendant also violated the law in that regard.

57. When an employer fails to keep accurate records of hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 is controlling. That rule states:

> [W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer failed to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

58. The U.S. Supreme Court set forth the above standard to avoid allowing the employer to benefit by failing to maintain proper records. Where damages are awarded pursuant to the standard in *Mt. Clemens*, "[t]he employer cannot be heard to complaint that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

59. Based on the foregoing, on behalf of himself and the putative Collective Action Members, Iske seeks unpaid overtime at the required legal rates for all their work during the relevant time period, an equal amount in liquidated damages, attorneys' fees, costs, post-judgment interest, and any other relief allowed by law. Moreover, on behalf of himself and the putative Collective Action Members, Iske specifically pleads recovery for the three (3) year period preceding the filing of this lawsuit through its resolution.

## VII.   JURY DEMAND

60. Iske hereby demands a jury trial on all causes of action and claims for relief with respect to which he and the putative Collective Action Members have a right to jury trial.

## VIII.   DAMAGES AND PRAYER

61. Plaintiff Kyle Iske asks that the Court issue a summons for Defendant to appear and answer, and that Iske and the putative Collective Action Members be awarded a judgment against Defendant or order(s) from the Court for the following:

    a. An order certifying this case as an FLSA collective action pursuant to 29 U.S.C. § 216(b), and requiring notice to be issued to all putative Collective Action Members;

    b. An award of damages, including all unpaid overtime wages, any other back pay available pursuant to the FLSA, liquidated damages, and restitution;

    c. Costs of action incurred herein, including expert fees;

    d. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216;

  e. Post-judgment interest; and

  f. Such other relief as the Court may deem just and proper.

Dated: November 22, 2022

           Respectfully submitted,

           **KILGORE & KILGORE, PLLC**

      By: */s/ Daryl J. Sinkule*
         DARYL J. SINKULE
         State Bar No. 24037502
         djs@kilgorelaw.com
         Kilgore Law Center
         3141 Hood Street, Suite 500
         Dallas, Texas 75219
         Telephone: (214) 969-9099
         Facsimile: (214) 379-0843

         **ATTORNEYS FOR PLAINTIFF KYLE ISKE AND THE PUTATIVE COLLECTIVE ACTION MEMBERS**